UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X
Kraton McGugan

                                  Plaintiff,            **MEMORANDUM RULING**
                                                        **AND ORDER**
           -against-                                Case No. 11-cv-00342 (TLM)

Linda L. Aldana-Bernier, M.D., et. al.


                                 Defendants,
---------------------------------------------------------------- X

Before the Court is defendants Dr. Rabbi Mahmudur, Femi Abioye, Jamaica Hospital

Medical Center, Dr. Shushan Hovanesian, and Dr. Lilian Aldana-Bernier's[1] Motions to Dismiss

[Rec. Doc. 46, 53, 56][2], plaintiff Kraton McGugan's Memorandum in Opposition thereto [Rec. Doc.

49, 51, 54, 58][3], and defendants' Reply Memoranda [Rec. Doc. 50, 52, 55] in further support of the

motions.  For the reasons that follow, defendants' motions will be GRANTED.

Plaintiff's Second Amended Complaint alleges that plaintiff was involuntarily taken from

a New York airport to Jamaica Hospital Medical Center ("JHMC") by Gamaliel Bonilla, Kenneth

Bogle, and Officer Angerhauser, and further alleges that defendants Linda Aldana-Bernier, M.D.,

Sushan Hovanesian, M.D., Rabbi Mahmuduer, M.D., and Remi Abioye, R.N. conducted inadequate

examinations, leading to an improper involuntary hospitalization of plaintiff. Plaintiff brings federal

---

[1]Defendants Gamaliel Bonilla, Kenneth Bogle, Officer Angerhauser, the City of New York, and the Port
Authority of New York and New Jersey do not move to dismiss the claims asserted against them.

[2] Defendants filed three motions to dismiss to reflect the interests of individual defendants, which the Court
will address together in this memorandum ruling and order.

[3]Plaintiff filed the identical memorandum in opposition to all three of defendants' motions.

claims under 42 U.S.C. § 1983, Section 504 of the Rehabilitation Act 29 U.S.C § 794, and the Americans with Disabilities Act, and New York state law claims for medical malpractice.

## I. Background

This statement of facts is drawn from plaintiff's second amended complaint [Rec. Doc. 29], which the Court accepts as true for purposes of defendants' motions to dismiss.

### a. Airplane Flight and Transport to JHMC

On July 23, 2008, plaintiff boarded a plane in San Francisco bound for New York City. During the flight, she requested a seat change because she began to cough uncontrollably, due to bronchitis, and she did not want to disturb passengers seated nearby. Initially, her request was denied, but later was granted after plaintiff used "stronger language." She moved to an empty row of seats and immediately fell asleep.

Upon awakening after the plane landed in New York, plaintiff found herself surrounded by three police officers. The officers handcuffed her and escorted her to an airport police station where she was questioned about her trip to New York. Plaintiff asserts that she answered the questions truthfully and in a non-hostile way. Shortly thereafter, plaintiff was transported to JHMC by Bogle, Bonilla and Officer Angerhauser. Plaintiff asserts that Bogle, Bonilla, or Officer Angerhauser administered an unknown medication by injection without her permission, which sedated her. Plaintiff further asserts that she was cooperative and did not engage in hostile behavior.

### b. Initial Examination/Treatment

Plaintiff remained sedated through her arrival at the emergency room at JHMC. Dr. Bacares, now deceased and thus not a defendant in this action, wrote a medication order authorizing the forcible administration of medication. Plaintiff asserts that Dr. Bacares did not conduct an evaluation

2

of plaintiff's mental status prior to authorizing the forcible administration of medication. Pursuant to Dr. Bacares medication order, defendant Abioye, a registered nurse, administered a combination of Haldol[4], Benadryl, and Ativan by injection. Furthermore, defendant Dr. Mahmudur issued a medication order that authorized the nursing staff to forcibly administer Haldol, Benadryl, and Activan on a as-needed basis. Plaintiff further asserts that Dr. Mahmudur and other members of the hospital staff failed to seek or obtain a court order permitting the administration of medication to plaintiff over her objection.

### c. Psychiatric Evaluation

On July 25, 2008, the plaintiff became frustrated and demanded to see a friend, Chris Tulipanov, using "curse words." Pursuant to Dr. Mahmudur's medication order, defendant Abioye administered medication over plaintiff's objection. Plaintiff asserts that she was not causing nor imminently likely to cause harm to herself or to others. Subsequently, hospital staff questioned plaintiff and she said she was in a romantic relationship with Chris Tulipanov. A staff member then attempted to contact Chris Tulipanov but mistakenly contacted Kris Dickman instead, plaintiff's ex-boyfriend. Mr. Dickman told the staff member that he was not in a relationship with plaintiff and described a dispute the two had in which plaintiff threw a metal object at him. Plaintiff asserts that hospital staff believed that she was suffering from delusions due to the fact that Mr. Dickman stated that he was no longer in a relationship with plaintiff.

Defendant Dr. Aldana-Bernier then conducted a psychiatric evaluation. Plaintiff asserts that she was heavily sedated during the evaluation and thus had difficulty talking to Dr. Aldana-Bernier.

---

[4]Haldol is a powerful anti-psychotic drug used to treat psychosis.

Plaintiff further asserts that Dr. Aldana-Bernier stereotyped her as dangerous and failed to conduct a minimally competent assessment. On July 26, 2008, Dr. Aldana-Bernier concluded that plaintiff suffered from a mental illness and certified plaintiff's involuntary hospitalization to JHMC pursuant to New York Mental Hygiene Law § 9.39.

Later on the same day, defendant Dr. Hovanesian evaluated plaintiff and confirmed the need for involuntary hospitalization pursuant to Mental Hygiene Law § 9.39 on the ground that the plaintiff posed a danger to others. Plaintiff asserts that Dr. Hovanesian also performed a substandard evaluation. Plaintiff remained involuntarily confined at JHMC until July 30, 2008.

### d. Procedural History

Plaintiff filed a Summons and Complaint [Rec. Doc. 1] in the United States District Court for the Eastern District of New York on January 21, 2011. On June 2, 2011, plaintiff filed an Amended Complaint [Rec. Doc. 16]. After obtaining permission from the Court, plaintiff filed a Second Amended Complaint [Rec. Doc. 29] on July 27, 2011, which asserted nine causes of action against ten defendants.

Plaintiff asserts the following causes of action: 1) § 1983 false imprisonment claim against Dr. Aldana-Bernier and Dr. Hovanesian; 2) § 1983 claim for violation of substantive due process against Dr. Aldana-Bernier and Dr. Hovanesian; 3) § 1983 claim for violation of procedural due process against Dr. Aldana-Bernier and Dr. Hovanesian; 4) § 1983 claim for violation of substantive due process against Dr. Mahmudur and Ms. Abioye; 5) violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 by JHMC; 6) § 1983 claim for violation of substantive due process against Mr. Bogle, Mr. Bonilla, and Officer Angerhauser; 7) violation of the Americans with Disabilities Act

against the City of New York and the Port Authority of New York and New Jersey; and claims 8) and 9) two New York State Law medical malpractice claims against Dr. Aldana-Bernier, Dr. Hovanesian, and JHMC.

Dr. Aldana-Benier [Rec. Doc. 56] and Dr. Hovanesian [Rec. Doc. 53] independently move to dismiss plaintiff's first, second, third, eighth, and ninth causes of action against them. Dr. Mahmudur and Femi Abioye jointly move to dismiss [Rec. Doc. 46] plaintiff's fourth cause of action against them. JHMS moves to dismiss [Rec. Doc. 46] plaintiff's fifth, eighth, and ninth causes of actions against it.

## II.     Motion to Dismiss Standard

In reviewing a motion to dismiss, the court accepts as true all allegations of fact made by the plaintiff and draws all reasonable inferences in the plaintiff's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). To survive a Rule 12(b)(6) motion, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 555 U.S. 544, 570 (2007)). The complaint must set forth factual allegations that are sufficient "to raise a right to relief above the speculative level." *Twombly*, 555 U.S. at 555.

## III. Discussion
### 1. Plaintiff's Federal Claims
#### i) § 1983 Claims : State Action

Plaintiff brings Section 1983 claims against Dr. Aldana Bernier, Dr. Hovanesian, Dr. Mahmudur, Ms. Abioye, and Jamaica Hospital Medical Center for violations of the Fourteenth

Amendment. Section 1983 was enacted pursuant to the authority of Congress to enforce the Fourteenth Amendment. *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982). Section 1983 requires plaintiff to prove each of the following: (1) that the defendants were acting under the color of state law at the time of the incident; and (2) that the defendants violated plaintiff's federal constitutional rights. *Washington v. Cty. of Rockland*, 373 F.3d 310, 315 (2d Cir. 2004). Section 1983's "under color of state law" element applies to acts of the state and excludes from its reach "merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40 (1999); *see Sybalski v. Ind. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008).

Under certain circumstances, however, the actions of a private entity can be attributable to the state, which can then subject the private entity to liability under Section 1983. Those circumstances exist when 1) the entity acts pursuant to the "coercive power" of the state, or is "controlled" by the state ("the compulsion test"); 2) when the state provides "significant encouragement" to the entity, the entity is a "willing participant in joint activity with the state," or the entity's functions are "entwined" with state policies ("the close nexus" test); or 3) where the entity "has been delegated a public function by the state" ("the public function test"). *Sybalski*, 546 F.3d at 257 (quoting *Brentwood Acad. v. Tenn. Sec. Sch. Ath. Ass'n*, 531 U.S. 288, 296 (2001)).

Plaintiff concedes that defendants[5] pursuing the instant motions are private actors but argues that their actions can be imputed to the state, subjecting them to liability under Section 1983. Compl. ¶¶91-106; Pl. Opp. Mem. at 7-12. Thus, the critical issue in plaintiff's Section 1983 claims is whether the conduct of private defendants, a hospital and medical personnel, towards plaintiff could

---

[5]In this memoradum ruling, "defendants" refers only to the defendants that have filed motions to dismiss: Dr. Aldana-Bernier, Dr. Hovanesian, Dr. Mahmudur, Femi Abioye, and Jamaica Hospital Medical Center.

be considered the actions of the state for the purposes of liability under Section 1983.

Plaintiff argues that defendants are subject to § 1983 liability because they derived the authority to commit and confine her against her will from the New York State Office of Mental Health ("OMH") and New York's Mental Hygiene Law ("MHL"). Specifically, plaintiff asserts that the "private defendants" engaged in state action "by engaging in a highly integrated scheme among public and private entities to exercise sovereign authority through the civil commitment process." Pl. Opp. Mem. at 7. Plaintiff's attorney, William M. Brooks, has made identical arguments in similar cases before the Second Circuit and the Eastern and Southern Districts of New York, having been rejected each time. *Okunieff v. Rosenberg*, 166 F.3d 507 (2d Cir. 1999) (affirming *Okunieff v. Rosenberg*, 996 F. Supp. 343 (S.D.N.Y 1998)); *Doe v. Harrison*, 254 F. Supp. 2d 338 (S.D.N.Y. 2003); *Monaco v. Stone*, 2002 WL 32984617 (E.D.N.Y. Dec. 20, 2002).

### a) The Compulsion Test

The defendants are not state actors as the MHL neither compels nor encourages involuntary commitment "any more than repossession laws are passed because states want to encourage creditors to repossess their debtors' goods." *Spencer v. Lee*, 864 F.2d 1376, 1379 (7th Cir. 1989). Under the compulsion test, "a State normally can be held responsible for a private decision only when it has exercised coercive power or provided such significant encouragement, overt or covert, that the choice must in law be deemed to be that of the State." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982); *Sybalski*, 546 F.3d at 257. New York's MHL simply sets forth a mechanism to effect involuntary commitments when necessary. *Okunieff*, 996 F. Supp. at 349. The MHL states:

> The director of a hospital *may* receive and retain therein as a patient any person alleged to be mentally ill and in need of involuntary care and treatment upon the certificates of two

7

examining physicians, accompanied by an application for the admission of such person. MHL § 9.27(a) (emphasis added).

The use of the word "may" illustrates the lack of encouragement or exercise of coercive power by the state. *Okunieff,* 996 F. Supp. at 349; *see Blum*, 457 U.S. at 1004. In short, the MHL leaves the decision to commit a patient completely to the physician's discretion. *Okunieff,* 996 F. Supp. at 350; *Doe*, 254 F.Supp. 2d at 342-43; *Monaco*, 2002 WL 32984617 at *27; see *Sybalski*, 546 F.3d at 258 (holding that the substantive rights established by the MHL do not amount to "significant encouragement" by the state regarding physician's decisions). Accordingly, the actions of the defendants cannot be attributed to the State under a theory of state compulsion.

### b) The Public Function Test

Civil commitment under the MHL, the act defendants are alleged to have made, is not "traditionally the exclusive prerogative of the State." *See Okunieff*, 996 F. Supp. at 353, aff'd 166 F.3d at 508; *Doe*, 254 F. Supp.2d at 343. Under the public function test, state action occurs when a private actor performs a function that is "traditionally the exclusive prerogative of the State." *Blum*, 457 U.S. at 1011; *Sybalski*, 546 F.3d at 259. The district court in *Okunieff*, after an extensive review of the historical record of involuntary confinement in New York, determined that the activity had traditionally been a private remedy, and the Second Circuit agreed with the district court's reasoning. *Okunieff*, 996 F. Supp. at 355-56, aff'd 166 F.3d at 508; *see Sybalski*, 546 F.3d at 259; *Doe*, 254 F. Supp. 2d at 343; *Monaco*, 2002 WL 32984617 at 29. Therefore, defendants' actions do not constitute state action under the public function test.

### c) Close Nexus Test

The MHL does not create a sufficiently close nexus between the state and the defendants to mandate their classification as state actors. The close nexus test attributes private action to the state when there is "a sufficiently close nexus between the State and the challenged action of the [private] regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Blum*, 457 U.S. at 1004; *Sybalski*, 546 F.3d at 258.

Plaintiff asserts "that OMH has devised a complex and deeply intertwined scheme to evaluate, detain, and treat individuals who are deemed to be mentally ill and dangerous." Pl. Opp. Mem. at 8. Specifically, plaintiff asserts "OMH has developed a system that imposes responsibility for the evaluation, detainment and treatment of individuals on municipal and private hospitals based on geographical location," which plaintiff refers to as "catchment areas." *Id.* Plaintiff finds that the "scheme put forth by OMH has resulted in the state so deeply insinuating itself into the commitment actions" that the private defendants are liable under §1983. *Id.*

OMH's relationship with private hospitals is not so "entwined" that it passes the close nexus test because the "MHL merely authorizes private physicians and hospitals to commit involuntary commitments yet leaves the decision of whether or not to commit to the professional discretion of the physicians." *Doe*, 254 F. Supp. 2d at 343; *see Okunieff*, 996 F. Supp. at 353-53 aff'd 166 F.3d at 508; *Monaco*, 2002 WL 32984617 at 28; *Sybalski*, 546 F.3d at 258 (holding that the substantive rights established by the MHL does not amount to "state entwining" regarding physician's decisions). Plaintiff concedes that the Second Circuit in *Okunieff* found no state action where private physicians acted under the MHL but argues that two later cases make *Okunieff* "of limited persuasive value." Pl. Opp. Mem. at 11-12. The Court disagrees.

Plaintiff relies on *Jensen v. Lane Cty*, 222 F.3d 570, 575 (9ᵗʰ Cir. 2000) and *Kia v. Mcintyre*, 235 F.3d 749 (2d Cir. 2000) where the Courts found a sufficiently close nexus between a state and a private hospital because the state was intimately involved in the hospital's treatment or discharge decisions. *Jensen*, 222 F.3d 570 (finding that the private physician's decision to commit a patient was made as a result of an evaluation process that was initiated by state mental health employees and that involved consultation with state mental health officials); *Kia*, 235 F.3d at 757 (finding state action where a private hospital kept an infant hospitalized longer than medically necessary solely because a state agency, which was required by state law to authorize the release of the infant, did not authorize the discharge of the infant).

In this case, however, there was no sufficiently close nexus between the state and the defendant's decisions because the private hospital did not consult or contact state employees regarding the evaluation or commitment of plaintiff nor did state officials participate in the commitment process in any way. *Bolmer v. Oliveira*, 570 F. Supp. 2d. 301, 321 (D. Conn. 2008) (holding that *Jensen* is not applicable where a plaintiff only encounters private employees at a private hospital because "the mere private use of a state involuntary commitment statute does not vest the private actor with the power of the state") (citing *Okunieff*, 996 F. Supp. at 353-53 aff'd 166 F.3d at 508).[6] Thus, defendants' actions do not constitute state action under the close nexus test.

In sum, the circumstances that may attribute private action to the state do not exist in this case under any test. Thus, plaintiff fails to state a claim upon which relief may be granted under §

---

[6]In *Bolmer*, plaintiff's attorney was an attorney of record, and the Court rejected the identical flawed argument that *Jensen* applied to situations where a plaintiff encounters only private employees. *Bolmer, 570 F. Supp. 2d at 320-21*.

1983 against Dr. Aldana-Bernier, Dr. Hovanesian, Dr. Mahmudur, or Ms. Abioye.  Accordingly,

defendants' motions to dismiss plaintiff's first, second, third, and fourth causes of action will be

granted.

### ii. Rehabilitation Act

Plaintiff asserts that JHMC violated Section 504 of the Rehabilitation Act, 29 U.S.C. §794

"by making stereotypical assumptions about the plaintiff based upon a determination that the

plaintiff suffered from a mental illness, specifically that the plaintiff posed a danger to others in the

absence of empirically based criteria that would have warranted a determination of dangerousness."

Compl. at ¶116.

In order to establish a violation of the Rehabilitation Act, plaintiff must allege a) that she had

a disability for the purposes of the Rehabilitation Act; b) that she was "otherwise qualified" for the

benefit that was denied; c) that she was denied the benefit solely as a result of her disability; and d)

that the benefit from which the plaintiff was deprived was part of a program or activity receiving

Federal financial assistance. *D'Amico v. City of New York*, 132 F.3d 145, 150 (2d Cir. 1998); *A.M.

v. New York City Dep't. of Educ.*, 2012 U.S. Dist. LEXIS 4866 (E.D.N.Y. Jan. 17, 2012) *(*quoting

*Doe v. Pfrommer*, 148 F.3d 73, 82 (2d Cir. 1998));  *see* 29 U.S.C. §794(a).

### a) *Disability*

42 U.S.C. § 12102 provides that the term disability includes situations where a plaintiff is

"regarded as" having an impairment by defendant(s). Accepting as true all allegations of fact made

by the plaintiff and drawing all reasonable inferences in the plaintiff's favor, defendants regarded

plaintiff as having a mental illness because they believed that plaintiff required involuntary

11

hospitalization. Compl. at ¶116 (claiming defendants made assumptions "based on determination that the plaintiff suffered from mental illness"). Thus, plaintiff adequately plead that she had a disability for the purposes of the Rehabilitation Act.

### b) *Otherwise Qualified*

The requirement that a plaintiff be "otherwise qualified" for the benefit which she alleges to have been denied means that the plaintiff is "a person who is qualified in spite of [her] handicap." *Bolmer v. Oliveira*, 570 F. Supp. 2d 301 (D. Conn. 2008) (quoting *Doe v. New York Univ.*, 666 F.2d 761, 775 (2d Cir. 1981)); *Mrs. C. v. Wheaton*, 916 F.2d 69, 74 (2d Cir. 1991). Thus, the Second Circuit established that Section 504 "prohibits discrimination against a handicapped individual only where the individual's handicap is unrelated to, and thus improper to consideration of, the services in question." *United States v. University Hospital*, 729 F.2d 144, 156 (2d Cir. 1984). "However, where medical treatment is at issue, it is typically the handicap itself that gives rise to, or at least contributes to, the need for services." *Id.* Moreover, the phrase "otherwise qualified" was designed for "relatively static programs or activities such as education, employment, and transportation systems." *Id.* (internal citations omitted). As a result, the Second Circuit held that "the phrase cannot be applied in the comparatively fluid context of medical treatment decisions without distorting its plain meaning." *Id.*

In this case, plaintiff asserts that defendant JHMC violated Section 504 because its employees made a medical decision to involuntarily commit her "based upon a determination that plaintiff suffered from mental illness." Compl. at ¶25. However, defendant's assessment of plaintiff's potential dangerousness and decision to involuntarily commit plaintiff are medical

treatment decisions and are directly related to defendant's alleged perception that plaintiff suffered

from a mental illness. Thus, plaintiff fails to state a claim upon which relief may be granted under

Section 504 of the Rehabilitation Act against JHMC. *Jacob v. Bon Secours Charity Health System,*

*Inc.*, 2011 U.S. Dist. LEXIS 15256, *8 (S.D.N.Y. Feb. 12, 2011) (holding that "an accusation that

an individual was involuntarily committed on the basis of a mental disability cannot serve as a basis

for an [Rehabilitation Act] violation for disability discrimination because such a finding would

convert every involuntary commitment transport into a civil rights violation")[7]; *Maccharulo v. NY*

*State Dept. Of Correctional Services,* 2010 U.S. Dist. LEXIS 73312, *7 (S.D.N.Y. July 21, 2010)

(holding that the Rehabilitation Act does not apply to claims regarding the quality of mental health

services or create a remedy for medical malpractice) (internal citations omitted).  Accordingly,

JHMC's motion to dismiss plaintiff's fifth cause of action will be granted.


**2. Plaintiff's State Law Claims**

Plaintiff asserts that Dr. Aldana-Bernier, Dr. Hovanesian, and JHMC violated New York

state law by engaging in medical malpractice by failing "to attempt to corroborate allegations of

dangerous conduct" and "to apply well accepted empirically based criteria for assessing

dangerousness." Compl. at ¶¶121-24. "A district court may decline to exercise supplemental

jurisdiction over a claim if it 'has dismissed all claims over which it has original jurisdiction.'"

*Hanig v. Yorktown Cent. Sch. Dist.*, 384 F. Supp. 2d 710, 725 (S.D.N.Y 2005) (quoting 28 U.S.C.

§ 1367(c)(3)). Further, when all federal claims are eliminated in the early stages of litigation, the

balance of factors generally favors declining to exercise pendent jurisdiction over remaining state

---

[7]The Court in *Jacob* granted defendants' summary judgment for plaintiff's ADA and Rehabilitation Act
claims after performing an ADA analysis but noted that the analysis of a claim under ADA is the same as the
analysis of a claim under the Rehabilitation Act. *Fulton v. Goord*, 591 F.3d 37, 42 n.1 (2d Cir. 2009).

law claims and dismissing them without prejudice. *Tops Mkts., Inc. v. Quality Mkts., Inc.,* 142 F.3d 90, 103 (2d. Cir. 1998) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).

Plaintiff's basis for federal subject matter jurisdiction with respect to Dr. Aldana-Bernier, Dr. Hovanesian, and JHMC is federal question jurisdiction rooted in plaintiff's claims brought under 42 U.S.C. § 1983 and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. Thus, as plaintiff's federal claims against Dr. Aldana-Bernier, Dr. Hovanesian, and JHMC must be dismissed for failure to state a claim upon which relief may be granted, the basis for the Court's original jurisdiction has been negated with respect to defendants Dr. Aldana-Bernier, Dr. Hovanesian, and JHMC. Accordingly, the Court declines to exercise supplemental jurisdiction over plaintiff's New York state law medical malpractice claims. 28 U.S.C. § 1367(c)(3); *Jacob*, 2011 U.S. Dist. LEXIS 15256 at *8; *see Kolari v. New York Presbyterian Hospital*, 455 F.3d 118 (2d Cir. 2006) (affirming district court's decision to decline the exercise of supplemental jurisdiction where plaintiff's federal law claims were eliminated on a motion to dismiss). Defendants' motions to dismiss plaintiff's eighth and ninth causes of action will be granted.

**IV. Conclusion**

Defendant Dr. Aldana-Bernier's motion to dismiss [Rec. Doc. 56] is GRANTED. Defendant Dr. Hovanesian's motion to dismiss [Rec. Doc. 53] is GRANTED. Defendants Jamaica Hospital Medical Center, Dr. Mahmudur, and Ms. Abioye's motion to dismiss [Rec. Doc. 46] is GRANTED. Accordingly, plaintiff's first, second, third, fourth, and fifth causes of action are dismissed with prejudice. Plaintiff's eighth, and ninth causes of action against Dr. Aldana-Bernier, Dr. Hovanesian, and JHMC are dismissed without prejudice. Plaintiff's remaining claims are his sixth cause of action against defendants Kenneth Bogle, Gamaliel Bonilla, and Officer Angerhauser for §1983 violations

and seventh cause of action against the City of New York and the Port Authority of New York and

New Jersey for violations of the Americans with Disabilities Act.

      **SO ORDERED.**

                                                              Tucker L. Melançon
                                                              United States District Judge

April 30, 2012
Brooklyn, NY